**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| WAYNE GILES<br>1320 Kitmore Road<br>Baltimore, Maryland 21239<br><br>and<br><br>KEIM HILL<br>1320 Kitmore Road<br>Baltimore, Maryland 21239<br><br>and<br><br>JOE N. EVANS, Individually<br>4930 Belair Road<br>Baltimore, Maryland 21206<br><br>and<br><br>RONDA R. JONES-EVANS, Individually<br>4930 Belair Road<br>Baltimore, Maryland 21206<br><br>and<br><br>JOE N. EVANS and RONDA R. JONES-EVANS, As Husband and Wife<br>4930 Belair Road<br>Baltimore, Maryland 21206<br><br>and<br><br>TERRY BROWN, Individually<br>1214 Military Turnpike<br>Plattsburgh, New York 12901<br><br>and<br><br>KATHLEEN BROWN, Individually<br>1214 Military Turnpike<br>Plattsburgh, New York 12901<br><br>and | CIVIL ACTION NO. |

| | |
|---|---|
| TERRY BROWN and KATHLEEN BROWN,<br>As Husband and Wife<br>1214 Military Turnpike<br>Plattsburgh, New York 12901<br><br>Plaintiffs<br><br>v.<br><br>ROYAL CARIBBEAN CRUISES, LTD.<br><br>Defendant | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Wayne Giles, Keim Hill, Joe N. Evans, Ronda R. Jones-Evans, Terry Brown and Kathleen Brown, by and through their attorneys, Paul D. Bekman and Bekman, Marder Adkins, LLC, hereby sues, Defendant, ROYAL CARIBBEAN CRUISES LTD. ("RCCL"), and for good cause alleges:

## JURISDICTION AND PARTIES

1. Plaintiff, Wayne Giles, is a resident of the state of Maryland.

2. Plaintiff, Keim Hill, is a resident of the state of Maryland.

3. Plaintiffs, Joe N. Evans and Ronda R. Jones-Evans, are residents of the state of Maryland.

4. Plaintiffs, Terry Brown and Kathleen Brown, are residents of the state of New York.

5. Defendant RCCL is a corporation incorporated under the laws of Liberia having its principal place of business in Florida.

6. The matter in controversy exceeds the required amount, exclusive of interest and costs. This case is brought under the Admiralty and Maritime Jurisdiction of this Honorable Court and is based upon diversity of citizenship of the parties.

7. Defendant, RCCL, at all times material, personally or through an agent:

a. Operated, conducted, engaged in or carried on business in this state;

b. Was engaged in substantial activity within this state;

c. Operated vessels in the waters of this state;

d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

e. The acts of Defendant set out in this Complaint occurred in whole or in the state of Florida;

f. The Defendant was engaged in the business of providing to the public and to the Plaintiffs in particular, for compensation, vacation cruises aboard the vessel, *Anthem of the Seas*.

8. Defendant is subject to the jurisdiction of the Courts of this state.

9. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

10. At all times material hereto, Defendant owned, operated, managed, maintained and/or controlled the vessel, *Anthem of the Seas*.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

11. This matter deals with Defendant RCCL's knowing and intentional decision to sail the Anthem of the Seas, **carrying more than 4,000 paying passengers, directly into the path of a Hurricane.** More than 4,000 passengers were subjected to hours of sheer terror as the gigantic cruise ship was battered by hurricane force winds and more than 30 foot waves. This terror was amplified by the recent *El Faro* tragedy, wherein a cargo ship knowingly sailed into a hurricane and 33 crewmembers all perished. Just months after one of the worst maritime

tragedies in recent history, Defendant RCCL's knowing, intentional and reckless conduct subjects RCCL to the imposition of punitive damages.

12. Remarkably, the two prior sailings of the *Anthem of the Seas* were delayed by as much as a day, due to bad weather. Nonetheless, prior to setting sail on Saturday, February 6, 2016, there were numerous forecasts which predicted the storm which the *Anthem of the Seas* encountered. At approximately 4:00 p.m. on Wednesday, February 3, 2016, the National Oceanic and Atmospheric Administration's (NOAA) Ocean Prediction Center first headlined the possibility of storm forced winds for Sunday, February 7, 2016 along the eastern coast near Cape Hatteras, NC. The NOAA indicated that winds would increase from 35-50 knot during the day to 40-55 knots Sunday night. The NOAA also forecasted seas to increase from 12-20 feet during the day to 15-28 feet Sunday night.

13. At approximately 4:20 p.m. on Friday, February 5, 2016, the NOAA issued a storm warning for Sunday, February 7, with winds of 30-55 knots during the day, increasing to 40-55 knots Sunday night. The NOAA also forecasted seas at 11-18 feet during the day and seas at 18-25 feet during the night.

14. The subject vessel left for its voyage at approximately 4:00 p.m. on Saturday, February 6, 2016. Concurrent with embarkation, at approximately 3:34 p.m. on Saturday, February 6, 2016, the **NOAA upgraded the storm warning to a Hurricane Force Wind Warning**. The NOAA was forecasting winds of 65 knots and 30 foot seas for Sunday, February 7, 2016.

15. RCCL knew or should have known of these hurricane force wind warnings, but nonetheless, the *Anthem of the Seas* left the Cape Liberty Port in Bayonne, New

Jersey, on February 6, 2016, intending to sail to the Bahamas, carrying more than 4,000 paying passengers.

16. As the vessel was leaving Port, Captain Claus Andersen informed the passengers that there was a weather system building along the east coast and he intended to outrun the growing storm.

In other words, RCCL was knowingly sailing directly towards a quickly intensifying hurricane.

17. The below image shows the projected path and the gigantic storm that RCCL knowingly sailed through:




18. As predicted, by 3:40 p.m. on Sunday, February 7, 2016, the hurricane-force winds and rough seas were battering the vessel so severely that Captain ordered all passengers to be confined in their staterooms until further notice.

19. While confined to their staterooms for approximately twelve hours, passengers were holding onto their beds and/or whatever they could find in order to keep from falling due to the severe crashing of waves and listing of the vessel. Furniture was overturned and tossed

throughout the vessel; broken glass littered all levels of the vessel; a portion of the ceiling collapsed; elevators became inoperable; waves crashed through open and/or shattered balcony doors; and water rushed in through numerous other areas of the vessel.

20. Waves were crashing over the top of the lifeboats tethered along the side of the *Anthem of the Seas* as the ship listed heavily to either side. At times the vessel listed (tilted) as far as 45 degrees and the passengers were violently thrown across their cabins.

21. Passengers scrambled to search for life jackets or floatation devices but were unable to do so. There were numerous families with small children aboard the vessel and parents did their best to protect themselves and their young children who were crying uncontrollably and screaming in sheer terror. These are examples of the extensive damage done to the vessel in the storm:





22. On Monday, February 8, 2016, RCCL decided to turn the *Anthem of the Seas* around and head back to New Jersey.

23. Each and all of the foregoing conditions, including but not limited to, the impending dangerous weather and sea conditions, were known and/or should have been known to RCCL prior to the time RCCL decided to sail on February 6, 2016, with Plaintiffs, Wayne Giles, Keim Hill, Joe N. Evans, Ronda R. Jones-Evans, Terry Brown, and Kathleen Brown. As such, RCCL knowingly, intentionally and recklessly decided to sail directly into the path of a hurricane force storm, thereby placing the lives at risk of each and every one of the passengers and crew aboard that ship.

24. At all times material hereto, Plaintiffs were paying passengers aboard Defendant's vessel, which was in navigable waters.

25. This action is brought by Plaintiffs, Wayne Giles, Keim Hill, Joe N. Evans, Ronda R. Jones-Evans, Terry Brown, and Kathleen Brown, for the injuries, physical and emotional, which they have sustained.

26. The Plaintiffs in this action were subjected to the hurricane-force winds and 30 foot seas on or about February 7, 2016.

27. The Plaintiffs were subjected to severe distress both physical, psychological and emotional; endured pain and suffering, along with physical and emotional injury as a result of Defendant RCCL's negligence and/or gross negligence and/or intentional conduct.

28. All Plaintiffs seek damages under the General Maritime Law of the United States for Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress and Negligence. Accordingly, this action satisfies the requirement of Rule 23(a)(2).

29. RCCL's passenger ticket contract contains a contractual provision which attempts to limit its passengers' right to file their claims against RCCL as a class action, but said provision is void because such an attempt by RCCL to limit its liability to passengers violates 46 U.S.C. 30509.[1] See Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1335–36 (11th Cir. 1984). Additionally and/or alternatively, the above provision should be deemed null and void as RCCL acted intentionally[2] by placing passengers in dangerous sea conditions that included 125 mph winds and 30 foot seas.

---

[1] 1 § 30509(a)(1)(A) states: "The owner, master, manager, or agent of a vessel transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country, may not include in a regulation or contract a provision limiting [...] the liability of the owner, master, or agent for personal injury or death caused by the negligence or fault of the owner or the owner's employees or agents."

[2] "[C]ontractual exculpatory clauses absolve the exculpated party only from ordinary negligence and should not be construed to include loss or damage resulting from intentional or reckless misconduct, gross negligence, or the like." In re New River Shipyard, Inc., 355 B.R. 894, 904 (Bankr. S.D. Fla. 2006)

## COUNT I – NEGLIGENCE

30. Plaintiffs reallege, adopt, and incorporate by reference the allegations in paragraphs 1 through 29 as though alleged originally herein and further allege:

31. It was the duty of Defendant RCCL to provide Plaintiffs and all others similarly situated with reasonable care under the circumstances.

32. On or about February 6, 2016, and continuing until February 7, 2013, RCCL and/or its agents, servants, and/or employees breached its duty to provide Plaintiffs with reasonable care under the circumstances.

33. Plaintiffs were injured due to the fault and/or negligence of Defendant RCCL, and/or its agents, servants, and/or employees as follows:

a. Failure to use reasonable care to provide and maintain a safe voyage for Plaintiffs, Wayne Giles, Keim Hill, Joe N. Evans, Ronda R. Jones-Evans, Terry Brown and Kathleen Brown, fit with proper and adequate machinery, crew, and equipment; and/or

b. Knowingly sailing the subject vessel into severe weather conditions; and/or

c. Failing to have proper policies and procedures in place to determine whether to sail into dangerous weather conditions; and/or

d. Deciding to sail the vessel despite severe weather warnings; and/or

e. Failing to have adequate technology capable of properly monitoring weather conditions in real time;

f. Sailing the vessel into hurricane-force winds; and/or

g. Sailing the vessel into 30 foot seas; and/or

h. Failing to turn back the vessel and/or divert the vessel and/or seek safe harbor before and encountering the storm; and/or

i. Failing to warn passengers of the dangers of leaving port in Bayonne, New Jersey with the vessel in light of the expected weather and sea conditions; and/or

j. Failing to take a safe route from Bayonne, New Jersey, to Cape Canaveral, Florida; and/or

k. Failing to alter route to a safe route while at sea; and/or

l. Exposing the vessel to weather and sea conditions that the vessel was unfit for; and/or

m. Failing to promulgate and/or enforce adequate policies and procedures to prevent the vessel from leaving port into an expected storm; and/or

n. Failing to promulgate and or enforce adequate policies and procedures to require the vessel to turn around and/or seek safe harbor when encountering an expected storm became likely; and/or

o. Failing to use reasonable care to promulgate and/or enforce adequate policies and procedures to ensure that the vessel was operated in a safe weather conditions; and/or

p. Exposing its passengers to hurricane force weather conditions; and/or

q. Failure to provide adequate training, instruction, and supervision to the captain and crew; and/or

r. Failure to promulgate and/or enforce adequate policies and procedures to ensure that safety would not be compromised for cost and/or profits; and/or

s. Failure to adequately maintain the *Anthem of the Seas*, its engines and machinery, so as to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

t. Failure to adequately inspect the *Anthem of the Seas*, its engines and machinery, so as to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

u. Failure to promulgate policies and/or procedures aimed at preventing the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

v. Failure to promulgate policies and/or procedures aimed at ensuring an adequate emergency plan to protect the health and welfare of passengers during an emergency; and/or

w. Failure to determine and/or appreciate the hazards associated with operating the subject vessel's propulsion system while encountering severe weather and sea conditions; and/or

x. Knowing, as a result of previous similar incidents, of the likelihood of a threat to passenger safety resulting from all of the above, yet failing to take corrective action and/or implement policies and procedures aimed at preventing and/or mitigating the harmful effects of the of the subject incident; and /or

y. Failure to promulgate adequate storm avoidance policies aimed at ensuring the safety of passengers; and/or

z. Failure to employ an in-house meteorological staff tasked with monitoring storms and/or sea conditions to ensure the safety of passengers.

34. At all material times, Defendant RCCL had exclusive custody and control of the vessel, *Anthem of the Seas*.

35. Defendant knew of the foregoing conditions causing Plaintiffs' injuries and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

36. As a result of the negligence of RCCL, Plaintiffs were injured about their bodies, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

WHEREFORE, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

**COUNT II – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

37. Plaintiffs reallege, adopt, and incorporate by reference the allegations in paragraphs 1 through 36 as though alleged originally herein and further allege:

38. At all times material, due to the negligence and/or gross negligence and/or intentional conduct of the Defendant, Plaintiffs were placed in an immediate risk of physical

harm. Said risk of physical harm included but is not limited to: injury and/or death and/or severe emotional and/or psychological trauma.

39. Defendant's negligence and/or gross negligence and/or intentional conduct caused severe mental and/or emotional harm and/or distress in the Plaintiffs, such as fear and anxiety. These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep and nightmares.

40. During the time period alleged in the complaint, Plaintiffs were confined to their stateroom for approximately twelve hours and were subjected to the violent storm causing a reasonable fear of death and the sinking of the vessel.

41. Plaintiffs aboard the *Anthem of the Seas* were placed in the zone of danger as a result of the violent storm. Each Plaintiff was in close proximity to conditions which did cause or could have caused serious physical, mental and/or emotional injury and/or illness.

42. Plaintiffs' fear of death and experience of mental, emotional and/or physical harm was genuine and well founded and Plaintiffs suffered mental or emotional harm (such as fright and anxiety) that was caused by the negligence of RCCL. This fright and anxiety has further manifested itself as multiple physical symptoms experienced by the Plaintiffs, including but not limited to insomnia, depression, anxiety, nightmares, and dizziness.

43. As a result of the negligent inflection of emotional distress by RCCL, Plaintiffs were injured about Plaintiffs' bodies, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred

medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

WHEREFORE, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

**COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

44. Plaintiffs reallege, adopt, and incorporate by reference the allegations in paragraphs 1 through 43 as though alleged originally herein and further allege:

45. As set forth above, the actions of RCCL were intentional or reckless and inflicted mental suffering. RCCL's conduct in both placing the subject vessel in a violent storm and subjecting passengers to a reasonable fear of death, despite RCCL's prior knowledge of the impending storm, was outrageous. This conduct is made more outrageous by the fact that this conduct was motivated by RCCL's desire to make profit rather than ensure the reasonable safety and welfare of its passengers.

46. RCCL's conduct caused the Plaintiffs to suffer through the fearful conditions alleged above.

47. All of the conditions previously alleged and endured by the Plaintiffs caused severe suffering and emotional distress as these conditions not only led to immediate risk of physical harm but also caused severe discomfort, anxiety, feelings of helplessness/hopelessness as the *Anthem of the Seas* battled the violent storm.

48. The conduct of RCCL as alleged above is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community. Put simply, RCCL recklessly and intentionally put more than 4,000 passengers through a living nightmare so it could protect its bottom line.

49. As a result of the intentional inflection of emotional distress by RCCL, Plaintiffs were injured about Plaintiffs' bodies, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

WHEREFORE, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

PAUL D. BEKMAN, Federal Bar No. 00019
BEKMAN, MARDER & ADKINS, L.L.C
300 West Pratt Street, Suite 450
Baltimore, Maryland 21201
(410) 539-6633

Attorneys for Plaintiffs